UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GREGORY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>USHA PANEMANGALOR PAI,<br><br>Defendant. | No.  2:19-cv-1591 DAD AC P<br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendant's motion for summary judgment.  ECF No. 64.  For the reasons discussed below, the undersigned recommends the motion be granted.

I.   Procedural History

In Fall 2019, plaintiff filed two actions against defendant, Dr. Pai: one in Solano County Superior Court[1] and the other in this court.  See ECF No. 26 at 2.  A week after the undersigned screened the federal complaint and found plaintiff had stated an Eighth Amendment medical deliberate indifference claim against defendant, ECF No. 7, the state court denied defendant's motion for summary judgment on plaintiff's negligence and intentional tort claims.  See ECF No.

---

[1] The undersigned took judicial notice of the docket report, complaint, Order After hearing, and several other related documents in the state court proceedings, Williams v. Pai, Case No. FCM168914 (Solano County Superior Court).  See ECF No. 26 at 2 (taking judicial notice of ECF No. 22 at 4-74).

1

22 at 61-66 (Williams v. Pai, Case No. FCM168914, Order After Hearing). In light of the progress in state court and the similarities in the two cases, defendant moved to stay this action, and the court granted the motion. ECF Nos. 21, 27. Plaintiff dismissed his state court action before trial so that he could proceed in this court. See ECF No. 33 at 5. Defendant then moved to lift the stay, which the court granted. ECF Nos. 33, 34. After the close of discovery, defendant filed a motion for summary judgment, which plaintiff opposes. ECF Nos. 64-66.

## II. Plaintiff's Allegations

Plaintiff alleges that defendant Dr. Pai violated plaintiff's rights under the Eighth Amendment by failing to provide him with adequate pain medication following vascular surgery—a lower left angiogram and thrombolysis operation and the repair of a fractured stent—at an outside hospital. ECF No. 1 at 3-4. Plaintiff alleges that Dr. Pai failed to adequately treat his post-operative pain although he complained repeatedly to her and to her staff of severe pain. Id. As the result of defendant's inaction, plaintiff suffered from severe lower extremity pain, sleep deprivation, anxiety, and mental anguish. Id. When he was put under the care of a different physician, plaintiff was promptly prescribed morphine three times a day for five days. Id. at 4.

## III. Motion for Summary Judgment

### A. Defendants' Arguments

Defendants argue they are entitled to summary judgment because defendant, Dr. Pai, provided plaintiff appropriate and responsive medical care and plaintiff's admitted refusal of all medical care defeats his Eighth Amendment claim. ECF No. 64-1 (Motion for Summary Judgment ("MSJ") Brief) at 13-18. Alternatively, Dr. Pai argues that she is entitled to qualified immunity. Id. at 18-21.

////
////
////
////
////
////

2

    B.  Plaintiff's Response[2]

In opposition, plaintiff argues that defendants are not entitled to summary judgment because their motion depends on facts identical to those disputed and decided against defendant in Williams v. Pai, Case No. FCM168941, and the evidence shows a material dispute concerning defendant's knowledge and whether defendant's care was inadequate. ECF No. 66 at 1-3.

IV.  Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

---

[2] Defendant simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 64-6; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice). While "[p]ro se litigants must follow the same rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc), district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should *not* be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted). Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

4

1  whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

V.   Undisputed Material Facts[3]

A.   Plaintiff's Medical Background

Plaintiff suffers from peripheral vascular disease, which is a chronic disorder of blood vessels in the arms or legs that cause the narrowing, blockage, or spasms of blood vessels reducing the ability of the body's circulatory system to function. DSUF ¶ 1. This disease is a potentially life-threatening condition because if a clot forms, it can cause the loss of a limb, organ failure, or death. DSUF ¶ 2.

On February 14, 2019, plaintiff was admitted to Queen of the Valley Hospital (Valley Hospital). ECF No. 64-4 at 13 (Valley Hospital Discharge Summary). Plaintiff underwent a procedure to dissolve a blood clot and on February 16, 2019, around 6:02 p.m., and was discharged to California Medical Facility (CMF). Id.; DSUF ¶ 3. The discharging physician, Dr. Goldstein, prepared instructions identifying which medications plaintiff should start, stop, and

---

[3] While plaintiff disputes DSUF paragraphs 8, 16-23, 29, 36, 39, 41, 43, 45, 49, 58, 62-64, 67, and 69-74, ECF No. 65 at 1-6 (Response to DSUF), he has not provided evidentiary support for each dispute. Based on the court's review of the evidence, regardless of plaintiff's stated dispute, the facts incorporated in this section are deemed undisputed. Any facts properly disputed with evidence are addressed in the discussion portion of these findings and recommendations.

continue. DSUF ¶ 4. New medications were designed to prevent blood clots. DSUF ¶¶ 5, 24. For pain, plaintiff was instructed to continue to take his pre-hospitalization medications of 650 mg of acetaminophen (Tylenol) and 800 mg of ibuprofen, as needed. DSUF ¶ 6.

B. Plaintiff's Medical Care at CMF

Upon arrival at CMF, plaintiff was admitted to the Correctional Treatment Center (CTC). DSUF ¶ 7. On February 16, 2019, around 9:42 p.m., a Registered Nurse (RN) documented her interaction with plaintiff and noted he was "ambulatory (with walker)," he refused to sign Conditions on Admission and Patient Rights form, and the RN was only able to do a limited assessment. DSUF ¶¶ 10-13. At that time, plaintiff refused treatment because he did not want to be housed in CTC because "[i]t was inconvenient." DSUF ¶¶ 12, 14-15.

On February 17, 2019, defendant Dr. Pai documented that plaintiff had been discharged from Valley Hospital after thrombolytic procedure and catheter directed TPA infusion. ECF No. 64-4 at 26 (History and Physical Report). She also documented plaintiff was in no discomfort, denied any pain, was ambulatory with a walker, and upset about being in CTC. Id. Because plaintiff had been prescribed blood thinners, defendant removed ibuprofen from his list of medications. DSUF ¶ 25. Defendant believed removing ibuprofen was the proper course of medical care, because ibuprofen increases the risk of bleeding when given in conjunction with the blood thinners he was recently prescribed. DSUF ¶ 26. Increased risk of bleeding is problematic because it can lead to serious injury or death. DSUF ¶ 27. Defendant also ordered several laboratory tests to evaluate plaintiff's status and risk of bleeding or blood clots. DSUF ¶ 31.

While in CTC, plaintiff was offered pain medication as needed in the form of acetaminophen. DSUF ¶ 30. On February 17, 2019, around 11:06 p.m., Licensed Vocational Nurse (LVN) Maahs provided plaintiff 650 mg of acetaminophen. DSUF ¶ 35. On February 18, 2019, around 4:26 a.m., LVN Maahs documented medication was effective. ECF No. 64-4 at 29 (Medication Administration Record); DSUF ¶ 36. On February 18, 2019, CTC nursing staff provided plaintiff with acetaminophen three times, consistent with his discharge orders. DSUF ¶¶ 37-38, 40, 42. An hour to four hours after each dose, a nurse documented that the acetaminophen was effective. DSUF ¶¶ 39, 41, 43.

On February 18, 2019, around 10:30 p.m., RN Cuaresma encountered plaintiff and documented that he was "resting comfortably" with "no apparent distress," DSUF ¶¶ 44-45, and that he verbalized an 8/10 pain level in left groin area. ECF No. 64-4 at 36 (Progress Notes). RN Cuaresma offered plaintiff acetaminophen. DSUF ¶ 46. Plaintiff responded, "[i]t doesn't help me at all," and "[r]efused to be examined." DSUF ¶¶ 46-47. RN Cuaresma documented this encounter on February 18, 2019, at 11:25 p.m. ECF No. 64-4 at 36 (Progress Notes).

On February 19, 2019, around 5:45 a.m., plaintiff asked a correctional officer for a man down. ECF No. 64-4 at 35 (Progress Notes). When RN Cuaresma explained that there are no inpatient man downs, plaintiff asked for a refusal form and filled it out. Id. RN Cuaresma explained she needed to examine him first before calling the POC for any findings, but he again refused to be examined. Id.; DSUF ¶ 48.

Around 6:34 a.m., RN Scott documented an encounter with plaintiff, noting plaintiff had walked out of CTC using a walker in an attempt to walk to the prison's Triage and Treatment Area (TTA), which is like an urgent care. ECF No. 64-4 at 6 (Feinberg's Decl. ¶ 18). He was intercepted, transferred to a wheelchair without assistance, and was taken to TTA. Id. At TTA, plaintiff reported he was not receiving pain medication at CTC and rated his pain 8/10 and described it as burning. Id.; ECF No. 64-4 at 39 (Progress Notes). At TTA, RN Scott examined plaintiff. ECF No. 64-4 at 6 (Feinberg's Decl. ¶ 18); ECF No. 64-4 at 39 (Progress Notes). RN Scott documented plaintiff was angry he was only ordered Tylenol for pain. ECF No. 64-4 at 39 (Progress Notes). RN Scott explained a TTA doctor cannot override defendant's pain medication orders because he is an inpatient. Id. Plaintiff stated that he would refuse to go back to CTC. Id. Around 6:49 a.m., plaintiff spoke to a sergeant, who informed plaintiff he could not refuse housing in CTC but was allowed to refuse medical treatment. Id. at 38. Sergeant encouraged plaintiff to speak to PCP about pain medication or discharge. Id. Plaintiff "[a]mbulated out with steady gait with walker." Id.

Between February 17 and February 19, defendant was not informed by any medical staff that plaintiff was experiencing any pain, and defendant did not have any knowledge to conclude plaintiff was having any pain issues. DSUF ¶ 50.

7

1    On February 19, 2019, when defendant tried to examine and assess plaintiff's medical
2 status, plaintiff was angry. DSUF ¶¶ 51, 54. Plaintiff stated he refused all medical care so long
3 as he remained in CTC and threatened to stop taking *all* his medications. DSUF ¶¶ 55, 57, 59.
4 He refused to communicate with defendant, to review his symptoms with defendant, to allow
5 defendant or any other CTC medical staff to examine him, and to allow defendant or any medical
6 staff to complete laboratory work on him. DSUF ¶¶ 52-54, 56, 60-61.

7    After her final encounter with plaintiff, defendant contacted plaintiff's hospital physician
8 at Valley Hospital for guidance on how to ensure plaintiff could recover from his treatments now
9 that he was refusing defendant's medical care. DSUF ¶ 65. Plaintiff's hospital physician
10 concluded that, to avoid increasing the risks of post-procedure complications through plaintiff's
11 refusal to participate in his medical care, plaintiff could be transferred to his regular housing
12 assignment and out of the CTC. DSUF ¶ 66. Based on her inability to determine whether she
13 could safely and effectively change plaintiff's pain medication and to prevent plaintiff from
14 causing himself harm by refusing to take his medications, in consultation with plaintiff's hospital
15 physician, defendant determined that the best course of treatment was to discharge plaintiff from
16 CTC, as he requested. DSUF ¶ 67.

17    Before discharging plaintiff, defendant confirmed he was scheduled for a follow-up
18 appointment with his hospital physician. DSUF ¶ 68. Defendant discharged plaintiff to his
19 regular housing assignment. DSUF ¶ 69.

20    Around 1:52 p.m., defendant created a discharge document, where she noted that plaintiff
21 threatened to stop all his medication stating he did not want to stay in CTC. ECF No. 64-4 at 41
22 (Discharge Documentation). Defendant further documented that plaintiff was being discharged to
23 general population to maintain compliance with his medication and avoid further medical issues
24 by noncompliance. Id.

25       C.   Plaintiff's Deposition Testimony

26    Plaintiff testified that he could lose his legs if he did not take his medications or stopped
27 medical treatment for his peripheral vascular disease, ECF No. 64-5 at 8 (Plaintiff's Deposition
28 Excerpt ("Pl's Depo") 45:9-11); it was important for medical providers to conduct exams so that

8

they can provide medical care, id. at 11 (Pl's Depo. 50:20-51:2); and that if he had refused to let the treating physician at Valley Hospital examine him, the physician would not have been able to treat plaintiff. Id. at 12 (Pl's Depo. 51:3-6).

### D. Expert Opinion

In Dr. Feinberg's medical expert opinion, defendant "properly removed ibuprofen from [plaintiff's] list of medications," id. (Feinberg Decl. ¶ 13), DSUF ¶ 28, and provided plaintiff proper and appropriate medical care between February 17 and 19, 2021. ECF No. 64-4 at 8 (Feinberg Decl. ¶ 22). In reaching his expert opinion, Dr. Feinberg noted that plaintiff showed no objective signs of unmanaged pain, and when plaintiff's medical records first documented that he claimed his pain was not properly managed, there was no documentation in his medical record of nursing staff conveying that information to defendant. ECF No. 64-4 at 8 (Feinberg Decl. ¶ 23).

## VI. Discussion

### A. Deliberate Indifference to Serious Medical Need

#### 1. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is "more than mere negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Even civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 836-37 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

9

exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

### 2. Analysis

The parties' briefs focus on the second prong of the Eighth Amendment deliberate indifference standard—subjective awareness and whether the treatment provided was medically unacceptable under the circumstances. See ECF No. 64-1 at 13-18; ECF No. 66 at 2-3; ECF No. 67 at 2-6. The court discusses each of these issues in turn.

#### a. Defendant's Knowledge Concerning Plaintiff's Pain

Because plaintiff contends that the state court ruling in Williams v. Pai, Case No. FCM168914, precludes defendant from claiming there is no material dispute with respect to this issue, see ECF No. 66 at 2; ECF No. 67 at 7-8, the undersigned begins there.

##### i. Consequence of State Court Ruling

Plaintiff argues that the state court already ruled that there is a genuine dispute of material fact whether defendant was aware of plaintiff's complaints about pain post-surgery. ECF No. 66 at 2. Defendant responds that the state court's ruling on a state-law negligence cause of action, does not defeat defendant's motion for summary judgment on an Eighth Amendment deliberate indifference claim, and that, to the extent plaintiff invokes issue preclusion, issue preclusion does not apply because the "state-court did not finally determine any fact or law as to [defendant's] conduct." ECF No. 67 at 7-8.

Although defendant's first argument is misleading,[4] the undersigned agrees that the state court ruling has no preclusive effect in this case.

To determine the preclusive effect of state court judgments, federal courts follow state rules on preclusion. White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012) (citing Kremer v. Chem. Const. Corp., 456 U.S. 461, 482 (1982)). In California, "[i]ssue preclusion applies: '(1) after final adjudication, (2) of an identical issue, (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who a party in the first suit or one in privity with that party.'" Hardwick v. Cnty. of Orange, 980 F.3d 733, 740 (9th Cir. 2020) (quoting DKN Holding LLC v. Faerber, 61 Cal. 4th 813, 825 (2015). For issue preclusion, also known as collateral estoppel, "final adjudication" refers to a decision in the former proceeding that is final and, on the merits. See Pac. Lumber Co. v. State Water Res. Control Bd., 37 Cal. 4th 921, 943 (2006). An adjudication is final if it "is determined to be *sufficiently firm* to be accorded conclusive effect." Border Bus. Park, Inc., v. City of San Diego, 142 Cal. App. 4th 1538, 1564 (2006) (emphasis added). The party asserting preclusion bears the burden of establishing these requirements. Hardwick, 980 F.3d at 740.

Plaintiff has not established that there was a "final adjudication" on the issue of defendant's knowledge in Williams v. Pai, Case No. FCM168914. An order *denying* summary judgment is not a "sufficiently firm" prior adjudication for issue preclusion purposes. Gietzen v. Covenant RE Management, Inc., 40 Cal. App. 5th 331, 338 (Sept. 24, 2019). "The non-preclusive effect of denial is explicitly recognized in the directive that a grant of summary adjudication as to some issues 'shall not operate to bar' relitigation of other issues 'as to which

---

[4] Defendant's first argument implies that the state only found a material dispute with respect to plaintiff's negligence claim. See ECF No. 67 at 7-8. However, the state court also found a material dispute with respect to plaintiff's "intentional tort" cause of action. ECF No. 22 at 64. It is the material dispute with respect to intentional tort, specifically the subjective mental state (what defendant was aware of at the time of treatment), that plaintiff argues governs the outcome in this case, and not the dispute with respect to the negligence cause of action. See ECF No. 66 at 2; see also ECF No. 26 at 6 n.2 (in ruling on defendant's motion for a stay in this case, the undersigned noted that although a negligence claim is governed by an objective standard, "adjudication of intentional tort under California law and deliberate indifference under federal law both require determination of Dr. Pai's subjective mental state or intent vis-à-vis plaintiff"). It is deceptive to suggest otherwise.

1  summary adjudication was either not sought or denied.' (Code Civ. Proc., § 437c, subdivision
2  (n)(2))." Salehi v. Surfside III Condominium Owners' Assn, 200 Cal. App. 4th 1146, 1158
3  (2011) (quoting Schmidlin v. City of Palo Alto, 157 Cal. App. 4th 728, 766 n.17 (2007), as
4  modified (Jan. 2, 2008)).  This is true "[e]ven when the denial is based on the . . . ground that a
5  material issue of fact does exist" because "this procedure falls short of a hearing on the merits."
6  Lucchesi v. Giannini & Uniack, 158 Cal. App. 3d 777, 787 (1984), disapproved on another
7  ground in Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 824 (2002).

8  Because plaintiff dismissed the state action before there was any final adjudication on the
9  issue of defendant's knowledge, defendant is not precluded from arguing the absence of a
10 material dispute with respect to whether defendant lacked the requisite knowledge required for a
11 deliberate indifference claim.

                          ii.    Defendant's Knowledge on February 17

13 Defendant argues that on February 17, 2019, based on her review of plaintiff's hospital
14 discharge paperwork, her observations, and plaintiff's denial of pain, she had no basis for
15 knowing that acetaminophen was insufficient to treat his pain.  ECF No. 64-1 at 8, 14-15; DSUF
16 ¶ 22.  She provides plaintiff's hospital discharge orders, in which the hospital physician did not
17 prescribe plaintiff any pain medication and instead instructed plaintiff to continue to take his pre-
18 hospitalization medications of 650 mg of acetaminophen (Tylenol) and 800 mg of ibuprofen, as
19 needed.  DSUF ¶¶ 6, 18; ECF No. 64-4 at 13-22 (Valley Hospital Discharge Records), 26-27
20 (History and Physical Reports).  She also provides evidence that she encountered plaintiff on
21 February 17, 2019, and that she observed and noted that he denied any pain, was ambulatory with
22 a walker, and in no discomfort.  DSUF ¶¶ 17, 19-21; ECF No. 64-3 at 3 (Declaration of U. Pai,
23 M.D. (Dr. Pai's Decl.) ¶ 9); ECF No. 64-4 at 26 (History and Physical Reports).

24 In opposition, plaintiff argues that his evidence shows that on February 17, 2019, when
25 defendant removed ibuprofen from plaintiff's list of medications and only left acetaminophen for
26 pain, she knew acetaminophen was insufficient because she knew the following: plaintiff had
27 been discharged from the hospital post-surgery on February 16; on that date, prior to discharge,
28 his pain ranged from a level 6/10 to 8/10 and he was given hyrdrocodone bitart/acetaminophen

(Norco) to treat his pain; and on February 15, his pain ranged from a level 4/10 to 9/10 and he was given Norco and morphine. ECF No. 66 at 2, 7-8. Plaintiff disputes that defendant had evidence plaintiff's pain was effectively being managed on grounds that defendant had no encounter with plaintiff on February 17, 2019, plaintiff did not deny he was in pain, and defendant did not observe him walking with a walker and in no discomfort. See ECF No. 65 at 2-3 (Response to DSUF ¶¶ 17, 19-21); id. at 12 (Pl's Decl. ¶ 22).

Even if the court assumes defendant had no encounter with plaintiff from which she could have observed and/or he could have reported no pain, the undersigned is unable to conclude that a reasonable jury could find, based on the evidence before the court, that on February 17, 2019, defendant *knew* plaintiff's pain was unmanaged and/or that 650 mg of acetaminophen every four to five hours, as needed, was insufficient to manage his pain. At most plaintiff has shown a dispute whether defendant *should have known* acetaminophen was inadequate—that she was grossly negligent and/or negligent. This is insufficient to satisfy the subjective knowledge requirement for an Eighth Amendment deliberate indifference claim. See Farmer, 511 U.S. at 837 (rejecting an objective test of what defendant *should have known* and requiring that defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* "draw the inference" for a deliberate indifference claim under the Eighth Amendment); Estelle, 429 U.S. at 106 (negligent treatment is insufficient to "state a valid claim for medical mistreatment under the Eighth Amendment"); Toguchi, 391 F.3d at 1060 (even gross negligence is insufficient to establish an Eighth Amendment inadequate medical treatment claim).

        iii.  Defendant's Knowledge between February 17 and 19

Defendant argues that between her two encounters with plaintiff, on February 17 and 19, she "was not informed by any medical professionals that [plaintiff] was experiencing any pain" and she "did not have any knowledge to conclude [plaintiff] was having any pain issues." DSUF ¶ 50. In opposition, plaintiff does not dispute this, see ECF No. 65 at 4 (Response to DSUF ¶ 50), however his declaration simultaneously asserts the records from February 16 to February 19 "clearly show that the defendant was aware of plaintiff's . . . post-operative complaint's [sic] of intense pain and the defendant ignored plaintiff's complaint's [sic]." ECF No. 65 at 12-15

13

(Pl's Decl. ¶¶ 22-26, 29).

The undersigned finds that the assertion in plaintiff's declaration is not supported by the evidence in this case. The only evidence from which defendant could have learned about plaintiff's pain between February 17 and 19 was from a Progress Note entered on February 18, 2019, at 11:25 p.m., in which a nurse documented plaintiff's pain at 8/10 and that he reported acetaminophen "doesn't help [him] at all." ECF No. 64-1 at 16; ECF No. 64-4 at 36; ECF No. 67 at 2. The existence of this record, however, does not establish that defendant, who did not author the Progress Note and is not mentioned in it, was aware of this information at the time plaintiff reported his pain to the nurse, or at the time the progress note was entered. Nor does it establish that defendant drew the inference that plaintiff's pain was unmanaged. Moreover, the same note indicated plaintiff refused to be examined, that he was "[r]esting comfortably" with "no apparent distress," ECF No. 64-4 at 36, and all other CTC records before then indicated 650 mg of acetaminophen was effective at managing his pain. ECF No. 64-4 at 29, 31-33 (Medication Administration Records). This evidence, when viewed in the light most favorable to plaintiff, at most shows that defendant could have learned that plaintiff reported experiencing pain late at night on February 18, which is insufficient to sustain a deliberate indifference claim.

Additionally, to the extent plaintiff asserts that the defendant knew about his pain before February 19 based on a Refusal of Examination and/or Treatment (CDC 7225) Form he completed on February 17, in which he noted his pain and the fact that "650 mg of acetaminophen was not providing much pain relief," ECF No. 65 at 12 (Pl's Decl. ¶ 22), the court disagrees. Plaintiff has not provided evidence that medical staff received a refusal form from him prior to February 19, 2019. See ECF No. 65 at 18-19 (Refusal of Examination and/or Treatment Forms). Besides, even if he had, plaintiff's self-reported pain on a form, like the nurse's progress note on February 18, does not establish a material dispute with respect to whether defendant *knew* plaintiff was experiencing unmanaged pain.

                iv.    Defendant's Knowledge on February 19

Defendant argues that on February 19, 2019, during her final encounter with plaintiff, she did not know 650 mg of acetaminophen was insufficient to treat plaintiff's pain because plaintiff

refused to communicate with her, to complete labs ordered by her, to review his symptoms with her, or to allow her to examine him, and because she did not observe any objective evidence that he was in pain. ECF No. 64-1 at 10, 16; DSUF ¶¶ 51-54, 56, 58, 60, 61. Of these facts, plaintiff only disputes that defendant did not observe any objective evidence that he was in pain. ECF No. 65 at 4-5 (Response to DSUF ¶¶ 51-54, 56, 60, 61 (not disputed), 58 (disputed)). However, plaintiff provides no evidence—not even his own declaration that he told defendant the acetaminophen was insufficient to manage his pain, and/or that he had symptoms that were visible without a full examination—to create a material dispute as to this fact.

Accordingly, plaintiff has not established a material dispute with respect to whether defendant knew 650 mg of acetaminophen was insufficient to manage his pain while he was under her care at CTC from February 17, 2019, through February 19, 2019. This issue alone is enough to defeat his medical deliberate indifference claim.

### b. Proper Course of Treatment

Defendant also argues that plaintiff's deliberate indifference claim fails because she properly and adequately cared for plaintiff when she removed ibuprofen from his medication list due to the heightened risk for potential deadly uncontrolled bleeding that occurs when ibuprofen is taken in conjunction with his new prescription for blood thinners; kept active plaintiff's prescription for acetaminophen for pain, in case he needed it, which was consistent with his hospital discharge instructions; and ordered several laboratory tests to evaluate plaintiff's status and risk of bleeding or blood clots. ECF No. 64-1 at 8, 14-15; DSUF ¶¶ 24-29, 31. Defendant further argues that she provided plaintiff proper and appropriate medical care while he was her patient at CTC, from February 17, 2019, through February 19, 2019, despite not having ordered additional pain medication, because it would have been improper medical care for her to provide plaintiff with a different pain medication without first examining him and reviewing recent laboratory tests to determine whether different pain medication would be safe and effective. ECF No. 64-1 at 10-11, 16; DSUF ¶¶ 67, 72. Because plaintiff refused to complete the labs defendant ordered, refused to let her and/or any other CTC medical staff examine him, refused treatment at CTC, and because he refused to communicate with defendant and discuss his symptoms, she was

unable to assess the need for and appropriateness of a change to his pain medication. ECF No. 64-1 at 17-18; DSUF ¶¶ 12, 14, 32, 51-56, 59-61, 67, 72.

Plaintiff does not dispute that it was the proper course of treatment for defendant to remove ibuprofen from his medication list. ECF No. 65 at 3 (Response to DSUF ¶¶ 24-28).[5] Nor does he dispute that he refused treatment at CTC and threatened to stop all medication so long as he remained at CTC. See ECF No. 65 at 2-5 (Response to DSUF ¶¶ 12, 14, 32, 48, 52-57, 59-61). Instead, plaintiff's primary dispute is with defendant's assertion that she was unable "to properly determine whether she could safely and effectively change [his] pain medication," ECF No. 65 at 6 (Response to DSUF ¶ 67), without first completing laboratory tests. Plaintiff argues that because a non-CTC doctor ordered him a five-day prescription for morphine the same afternoon he was discharged from defendant's care, without the need for laboratory tests, it was improper for defendant to not prescribe him alternative pain medication unless or until he completed the laboratory tests she ordered. See ECF No. 65 at 14 (Pl's Decl. ¶ 28); ECF No. 66 at 2, 8. Because of this, plaintiff also disagrees with Dr. Feinberg's expert testimony that defendant provided plaintiff "proper and appropriate medical care while [plaintiff] was [defendant's] patient from February 17, 2019, through February 19, 2019." ECF No. 65 at 5 (Response to DSUF ¶ 70).

Plaintiff's argument establishes nothing more than a difference of opinion, which is insufficient to support a claim of deliberate indifference. Toguchi, 391 F.3d at 1058 (changing the prescription ordered by another physician is a mere difference of medical opinion insufficient

---

[5] Although plaintiff's declaration states that defendant did not "treat" him on February 17, 2019, because she "was not physically present at CMF-CTC and was a physician-on-call (POC)," he does not dispute that he was under her medical care and that defendant determined the pain medication he could receive on February 17, 2019. ECF No. 65 at 2 (Response to DSUF ¶ 16 ("the defendant became plaintiff's primary care provider when plaintiff was admitted into CMF-Correctional Treatment Center based on his medical records")), 12 (Pl's Decl. ¶ 12) (On February 17, 2019, "nursing staff told plaintiff that defendant had only ordered him 650 mg of acetaminophen every 4 to 5 hours and will be available to examine plaintiff on Monday, February 18, 2019."), 13 (plaintiff was informed that "Dr. Pai is the only one who can order pain medication" because he is inpatient and a "TTA doctor can not override her orders"). Accordingly, defendant provided plaintiff medical care, and the issue is a disagreement as to whether that medical care (treatment) was adequate, and not whether medical care was provided in the first place.

to establish deliberate indifference). Absent evidence that defendant's treatment was medically unacceptable under the circumstances, plaintiff's deliberate indifference claim against defendant fails. See Ruiz v. Akintola, No. CIV S-09-0318 JAM GGH P, 2010 WL 1006435, at *7, 2010 U.S. Dist. LEXIS 25525, at *18 (E.D. Cal. Mar. 17, 2010) (summary judgment for defendants granted with respect to plaintiff's inadequate medical care claim where he presented no expert evidence that the Ultram he was prescribed by defendants, instead of the Norco that had been recommended by U.C. Davis physicians, was not medically warranted or reasonable), affirmed 457 F. App'x. 637 (9th Cir. Nov. 2, 2011).

That plaintiff subsequently allowed another doctor to examine him, and that doctor prescribed plaintiff alternative pain medication, ECF No. 65 at 14 (Pl's Decl. ¶ 28), does not create a material dispute as to the medical acceptability of Dr. Pai's treatment because the circumstances were different. First, plaintiff permitted the second doctor to examine him whereas he did not allow defendant to examine and assess his medical needs. See ECF No. 64-5 at 12 (Pl's Depo. 51:3-6) (plaintiff acknowledged that a doctor would not be able to treat him without first examining him). Even if the other doctor had prescribed alternative medication without even examining plaintiff, the difference in treatment would establish nothing more than a difference of opinion—it would not support a reasonable conclusion that defendant's course of treatment was medically unreasonable, which is what is required.

Moreover, the court agrees that plaintiff's refusal to be examined and treated by defendant on February 19, 2019, defeats his deliberate indifference claim with respect to defendant's treatment on that day. See Mester v. Malakkla, No. 2:17-cv-1781 AC P, 2018 WL 2388802, at *6, 2018 U.S. Dist. LEXIS 88432, at *17 (E.D. Cal. May 25, 2018) (a prisoner cannot refuse treatment and then claim deliberate indifference for failure to treat his medical condition); McNeil v. Singh, 1:12-cv-1005 RRB, 2013 WL 1876127, at *19 n.59, 2013 U.S. Dist. LEXIS 638891, at *56 n.59 (E.D. Cal. May 3, 2013), aff'd, 559 F. App'x 624 (9th Cir. 2014) ("While it was clearly within McNeil's right to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition."). This case is similar to Mester, in which the court dismissed a complaint alleging an Eighth Amendment medical deliberate indifference

claim because plaintiff could not refuse to consult with his physician and refuse alternative options to manage his pain prior to surgery and then claim deliberate indifference for failure to schedule his surgery. Mester, 2018 WL 2388802, at *6. Here, defendant ordered laboratory tests to assess plaintiff's medical status, attempted to examine him, and prescribed acetaminophen but plaintiff refused all efforts to treat him. He cannot now claim defendant acted with deliberate indifference in denying him alternative pain medication where his actions prevented defendant from evaluating his medical condition and need for pain medication.

Lastly, plaintiff's reliance on Chess v. Dovey and Franklin v. Dudley, two cases in which summary judgment was denied on Eighth Amendment claims based on inadequate pain medication, is misplaced. See Chess v. Dovey, No. CIV-S-07-1767 LKK DAD P, 2011 WL 567375, at *21, 2011 U.S. Dist. LEXIS 15835, *56-59 (E.D. Cal. Feb. 15, 2011), report and recommendation adopted, 2011 WL 1219268, 2011 U.S. Dist. LEXIS 33750 (E.D. Cal. Mar. 30, 2011); Franklin v. Dudley, No. 2:07-cv-2259 FCD KJN P, 2010 WL 5477693, at *6, 2010 U.S. Dist. LEXIS 138549, at *17 (E.D. Cal. Dec. 29, 2010), adhered to 2011 WL 2493770, 2011 U.S. Dist. LEXIS 66337 (E.D. Cal. June 22, 2011). In Chess and Franklin, in order to comply with a general prison policy prohibiting certain narcotics for prisoners in general population, medical providers substituted the narcotic prescribed to treat the prisoners' chronic pain with Tylenol and other over-the-counter medications. Chess, 2011 WL 567375, at *7, 20, 2011 U.S. Dist. LEXIS 15835, at *19-20, 56-57; Franklin, 2010 WL 5477693, at *4, 2010 U.S. Dist. LEXIS 138549, at *10-12. Despite evidence that the substituted medications were ineffective, medical providers refused to provide the prisoner with adequate pain medication. Chess, 2011 WL 567375, at *7, 20, 2011 U.S. Dist. LEXIS 15835, at *56-59; Franklin, 2010 WL 5477693, at *6, 2010 U.S. Dist. LEXIS 138549, at *15-16.

Here, defendant did not substitute plaintiff's narcotic pain medication for an over-the-counter medication. Although plaintiff complains that defendant only gave him acetaminophen, despite having received Norco and/or morphine at the hospital on February 15 and 16, the undisputed evidence shows plaintiff was not discharged from the hospital with prescriptions for either Norco or morphine, or any new pain medication to treat him post-surgery. DSUF ¶¶ 4-6.

Instead, plaintiff was discharged from the hospital with instructions to continue with his pre-hospital medications of 650 mg of acetaminophen every four to six hours and 800 mg of ibuprofen every six hours, as needed, and was prescribed blood thinners. Id. Defendant also did not deny and/or substitute plaintiff a prescription due to a prison policy. After reviewing plaintiff's discharge paperwork, defendant remove ibuprofen from his medication list because there was no indication he had unmanaged pain and because ibuprofen posed a heighten risk of deadly uncontrolled bleeding when taken in conjunction with the blood thinners. DSUF ¶¶ 24-28. Moreover, unlike in Chess and Franklin, there is no evidence that defendant here knew that acetaminophen was ineffective at treating plaintiff's pain. DSUF ¶¶ 36, 39, 41, 43, 45-56, 60-61. Accordingly, these cases are inapposite.

Because plaintiff provides no medical evidence that defendant's medical care was medically unacceptable and because plaintiff prevented defendant from assessing plaintiff's medical needs, plaintiff fails to meet his burden to proceed to trial on this claim.

        B.        Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address defendant's qualified immunity argument and the court declines to do so.

////

////

VII. <u>Plain Language Summary of this Order for a Pro Se Litigant</u>

It is being recommended that defendant's motion for summary judgment be granted, and this case be dismissed because you have not put forth evidence to show that the care and treatment provided by defendant was medically unacceptable and constituted deliberate indifference to your medical needs. The district judge will make the final decision.

<u>CONCLUSION</u>

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 64) be GRANTED, and judgment be entered in favor of defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE